UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHRISTINA CROSSMAN, : | |
| : | |
| Plaintiff, : | |
| : | No. 3:08cv01823 (MRK) |
| v. : | |
| : | |
| MICHAEL J. ASTRUE, : | |
| COMMISIONER OF THE SOCIAL : | |
| SECURITY ADMINISTRATION, : | |
| : | |
| Defendant. : | |

**RULING AND ORDER**

Plaintiff Christina Crossman brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability benefits.  Ms. Crossman claims that the decision of the Administrative Law Judge ("ALJ") was not supported by substantial evidence and was contrary to the applicable legal standards.  *See generally* Pl.'s Mem. Supp. of Mot. for Order Reversing the Decision of the Commissioner, or, in the Alternative, for Order Remanding for Reh'g (hereinafter, "Pl.'s Mot.") [doc. # 18].  The Commissioner argues to the contrary, and has moved for an order affirming the decision to deny Ms. Crossman benefits.  *See* Def.'s Mem. in Supp. of Mot. for Order Affirming the Decision of the Commissioner (hereinafter, "Def.'s Mot.") [doc. # 27].  For the reasons set forth below, the Court finds that the Commissioner's decision contains legal error and is not supported by substantial evidence.  Accordingly, the decision of the Commissioner is REVERSED and this case is REMANDED for future proceedings consistent with this opinion.

## I. Procedural History

Ms. Crossman applied for disability benefits on November 3, 2004, alleging an onset of disability date of May 1, 2004. *See* Administrative Record ("A.R.") [doc. # 12] at 50. Ms. Crossman alleges disability due to fibromyalgia, obesity, anxiety, depression, and various orthopedic ailments. *See* Pl.'s Mot. at 13-14. Mr. Crossman's application was denied a month later, on December 3, 2004. *See* A.R. at 47. After requesting reconsideration on January 27, 2005, *see id.* at 41, which was denied on or about September 9, 2005, *see id.* at 27, Ms. Crossman requested a hearing before an ALJ, which was held more than two years later on September 4, 2007. *See* Tr. of H'ring, A.R. at 389-429. In addition to Ms. Crossman, who was represented by counsel at the hearing, the ALJ heard testimony from Ms. Crossman's mother, Margaret Miller, and a vocational expert. *See id.* The ALJ's opinion denying Ms. Crossman's claims was issued on May 22, 2008. *See* ALJ Decision, A.R. at 12-26. The Appeals Council denied Ms. Crossman's request that it review the ALJ's decision on September 26, 2008, *see* A.R. at 5-8, making the Commissioner's decision final as of that date. Ms. Crossman sought review in this Court with the filing of her Complaint [doc. # 3] on December 1, 2008.

## II. Legal Standard and Scope of Review

This Court's review of the Commissioner's decision is limited, as it may be set aside only due to legal error or if it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g) (providing that the Commissioner's factual findings are conclusive if supported by substantial evidence); *Yancey v. Apfel*, 145 F.3d 106, 110-11 (2d Cir. 1998). "Substantial evidence" is less than a preponderance but "more than a mere scintilla" and as much as "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Perez v. Chater*, 77 F.3d 41, 46 (2d

Cir. 1996).  "Thus, as a general matter, the reviewing court is limited to a fairly deferential standard."  *Gonzalez ex rel. Guzman v. Commissioner*, No. 09-2006-cv, 2010 WL 106660, at *1 (2d Cir. Jan. 13, 2010) (summary order) (citing *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)).  If the decision of the ALJ evinces legal error or is unsupported by substantial evidence, the Act provides that the "Court shall have the power to enter . . . a judgment . . . reversing a decision of the Secretary, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

To be considered disabled under the Act and therefore entitled to benefits, Ms. Crossman must demonstrate that she is unable to work after a date specified (in her application, she claimed May 1, 2004) "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *Id.* § 423(d)(1)(A).  Such impairment or impairments must be "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1520(c) (requiring that the impairment "significantly limit [ ] . . . physical or mental ability to do basic work activities" to be considered "severe").

There is a familiar five-step analysis used to determine if a person is disabled.  *See* 20 C.F.R. § 404.1520.  In the Second Circuit, the test is described as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience. . . . Assuming the

> claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Berry v. Schweiker*, 675 F.2d 464, 467 (2d 1982) (per curiam)) (alterations in original).

Through the fourth step, "the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform" given what is known as her "residual functional capacity." *Gonzalez*, 2010 WL 106660, at *2 (citing *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). "Residual functional capacity" is what a person is still capable of doing despite limitations resulting from her physical and mental impairments.  *See* 20 C.F.R. § 416.945(a).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir. 1978).  "[E]ligibility for benefits is to be determined in light of the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied."  *Id.* (quotation marks and citation omitted).

### III.    The Commissioner's Decision

In this case, the ALJ undertook the prescribed five-step analysis and concluded that Ms. Crossman was not disabled.  After finding, at step one, that she had not engaged in any substantial gainful activity since the alleged onset of disability, *see* A.R. at 17, the ALJ determined that Ms.

Crossman suffers from the following severe combination of impairments: fibromyalgia,[1] obesity, anxiety, and depression. *See id.* At step three, the ALJ concluded that Ms. Crossman was not presumptively disabled because she "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2] *Id.* at 21.

Ms. Crossman argues that the ALJ did not properly evaluate the limitations caused by the impairments that he found to be severe. With respect to her fibromyalgia, she argues the ALJ erred in at least two ways: first, by violating the so-called "treating physician rule" in unjustifiably privileging the opinions of consulting physicians over those of the doctors who have treated her; and second, by discounting her subjective complaints of pain because of the absence of positive objective medical tests. Ms. Crossman also argues that the ALJ erred at step three by not properly considering the limitations caused by either her obesity or her mental and emotional impairments, and that he failed to consider the cumulative effect of all of her impairments in combination.

Since the ALJ found that Ms. Crossman was not disabled *per se* at step three, he proceeded to step four, which is to identify her "residual functional capacity," or "RFC." The ALJ concluded that Ms. Crossman has the RFC to perform light work, as defined in 20 C.F.R. § 416.967(b) and

---

[1] Fibromyalgia, also known as "fibrositis," is "[a] syndrome of chronic pain of musculoskeletal origin but uncertain cause." *Green-Younger v. Barnhart*, 335 F.3d 99, 101 n.1 (2d Cir. 2003) (citing *Stedman's Medical Dictionary* 671 (27th ed. 2000)).

[2] The Supreme Court has explained that these listings constitute "descriptions of various physical and mental illnesses and abnormalities, most of which are categorized the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 529-30 (1990) (footnotes omitted). If an impairment does not exist in the Appendix, the ALJ has the responsibility for determining whether the impairment medically equals a closely analogous listed impairment. *See* 20 C.F.R. §§

Social Security Ruling ("SSR") 83-10. *See* A.R. 22-25. Here again Ms. Crossman argues that the ALJ gave insufficient weight to the opinion of her treating physician, Dr. Dushyant B. Parikh. Finally, at step five, after considering Ms. Crossman's age, education, work experience, RFC, and the vocational expert's testimony, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Ms. Crossman can perform. *See id.* at 25-26. Ms. Crossman argues that ALJ erred in relying on the vocational expert's testimony because the hypothetical questions posed to the expert were not representative of the limitations caused by her ailments. The Court will consider each of Ms. Crossman's arguments in turn.

## IV.   Discussion

### a. Fibromyalgia

There is no dispute that Ms. Crossman suffers from fibromyalgia, as the ALJ found. Indeed, at least five physicians have confirmed this diagnosis, including her primary care physician, Dr. Parikh, *see* A.R. at 44, 224-225; two rheumatologists, *see id.* at 176, 323, 336; and the consultative examiner, Dr. Jolda, *see id.* at 383. However, the "mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability." *Rivers v. Astrue*, 280 Fed. Appx. 20, 22 (2d Cir. 2008) (summary order). Thus, the dispute in this case is the degree to which Ms. Crossman's fibromyalgia restricts her ability to perform basic work activities. The ALJ concluded that while "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms," Ms. Crossman's assertions "concerning the intensity, persistence and limiting effects of those symptoms are not credible to the extent alleged." A.R. at 23. The ALJ seemed to rely on three sources of evidence to sustain this finding. First, the ALJ

---

404.1526(b) & (e).

stated that while the evidence supported the conclusion that Ms. Crossman suffers from fibromyalgia, the absence of objective medical evidence contradicted her claim that the syndrome caused her "to be unable to lift and/or carry more than 10 pounds," pointing out that "x-rays of her right forearm . . . revealed no acute bony abnormalities"; "x-rays of the cervical spine and right shoulder showed no bony abnormalities and only very mild degenerative changes within the cervical spine"; and that "Dr. Parikh's examination in May 2004[] revealed no abnormalities." *Id.* at 24. Second, the ALJ gave "significant weight" to the opinion of the consulting physician, Dr. Jolda, who found that despite Ms. Crossman suffering from "widespread pain," she could nonetheless lift and/or carry up to 10 pounds continuously, 11 to 20 pounds frequently, and weights between 20 and 100 pounds occasionally, and could perform most other basic work activities with few limitations. *See id.* at 20, 374-83. Third and finally, the ALJ seemed to rely on Ms. Crossman's statements concerning her daily activities, including those efforts necessary to care for herself and her two children, such as bathing herself and performing simple chores, to conclude that her fibromyalgia was not as limiting as Ms. Crossman urges. *See id.* at 23.

Ms. Crossman argues that the ALJ improperly discounted the limitations caused by her fibromyalgia, erroneously relying on an absence of positive objective test results to conclude that her functional limitations are insufficient to make her presumptively disabled at step three. Pl.'s Mot. [doc. # 18] at 14-16. She also argues that the ALJ misunderstands the nature of fibromyalgia – which has no definitive test and few objective indicators – and erred by not determining the severity of her pain and the limitations caused thereby. *See id.* at 16-17. Finally, Ms. Crossman asserts that the ALJ erred by discounting the opinion of her primary care physician, Dr. Dushyant B. Parikh, as well as another treating physician, Dr. Ajit J. Kokkat, and privileging instead the opinions of

7

consulting physicians. *See id.* at 21-23. While the Court cannot say from the evidence before it whether Ms. Crossman ought to be considered presumptively disabled at step three, it does agree that the ALJ significantly departed from established precedent – particularly the Second Circuit's landmark case on fibromyalgia, *Green-Younger v. Barnhart*, 335 F.3d 99 (2d Cir. 2003) – in the consideration of her fibromyalgia.

The ALJ's opinion in *Green-Younger* bears a striking resemblance to the one before the Court. There, the ALJ – whose opinion was affirmed by the district court – found that while the medical evidence supported a diagnosis of fibromyalgia, "[c]ontrary to the claimant's persistent complaints of pain, there are no objective medical findings." *Id.* at 105.

> As a result, the ALJ found that (1) the opinions of [the treating physician] regarding Green-Younger's limitations "cannot be afforded extra weight because they are not well-supported by medically acceptable clinical and laboratory diagnostic techniques, and are inconsistent with the other substantial evidence of record," namely [a] physical therapist['s] work capacity evaluation; and (2) Green-Younger's "allegations of pain and functional limitations are . . . not entirely credible in light of the minimal objective medical findings."

*Id.* (quoting the ALJ decision) (alteration in original). The ALJ then concluded that Ms. Green-Younger was not disabled because she retained the residual functional capacity to perform sedentary work. *See id.*

On appeal, Ms. Green-Younger argued that the ALJ and the district court failed to give controlling weight to her treating physician and "misunderstood the nature of fibromyalgia in requiring 'objective' evidence beyond those clinical signs and symptoms necessary for a diagnosis." *Id.* The Second Circuit agreed on both counts. First, in regards to the treating physician, the Court noted that while "[a] treating physician's statement that the claimant is disabled cannot itself be determinative," *id.* at 106 (quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)), SSA regulations

advise claimants that "a treating source's opinion on the issue(s) of the *nature and severity of your impairment(s)*" will be given "controlling weight" if the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." *Id.* (quoting 20 C.F.R. § 404.1527(d)(2)) (emphasis in original). The Second Circuit concluded that "the ALJ erred by failing to give controlling weight to the treating physician's opinion and effectively requiring objective evidence beyond the clinical findings necessary for a diagnosis of fibromyalgia under established medical guidelines." *Id.*

The court of appeals then recounted how Ms. Green-Younger's treating physician opined that her ability "to function at a normal level because of the persistent, severe pain is markedly limited," *id.*, and that the doctor noted specific limitations that were inconsistent with the ALJ's conclusion that she was capable of performing sedentary work. *See id.* at 106-07. The *Green-Younger* court then discussed how the claimant "exhibited the clinical signs and symptoms to support a fibromyalgia diagnosis under the American College of Rheumatology (ACR) guidelines," demonstrating that the treating physician's diagnosis was well-founded. *Id.* at 107. The Second Circuit found no problem with the treating physician's reliance on Ms. Green-Younger's subjective complaints of pain in making the diagnosis, "as '[a] patient's report of complaints, or history, is an essential diagnostic tool.'" *Id.* (quoting *Flanery v. Chater*, 112 F.3d 346, 350 (8th Cir. 1997)).

The *Green-Younger* court then rejected the "only evidence which might be inconsistent" with the treating physician's opinion as "not substantial" and not capable of supporting the conclusion that Ms. Green-Younger could work. *See id.* In particular, the court said that a consulting physician's conclusion that Ms. Green-Younger could perform sedentary work because the doctor found no "deficits of motor function or significant arthritis to severely limit sitting or standing" was

9

essentially irrelevant, as Ms. Green-Younger "was not complaining of deficits in motor functioning or arthritis, she was complaining of debilitating pain from fibromyalgia." *Id.* at 108. The circuit court concluded that the consulting physicians and the ALJ either "did not actually credit [the treating physician's] diagnosis of fibromyalgia or misunderstood its nature. . . . effectively require[ing] 'objective' evidence for a disease that eludes such measurement." *Id.*

Similar to the ALJ in this case, the Second Circuit faulted the ALJ in *Green-Younger* for discounting the treating physician's conclusions regarding the claimant's limitations and her own allegations of pain and functional limitations as not "entirely credible" in light of the consulting physician's "work fitness evaluation" and the "minimal objective findings." *Id.* The court also pointed out how the ALJ's reliance on the "perceived lack of objective evidence" tainted his decisions to disregard the evidence supporting the claimant's application. *Id.* With respect to Ms. Green-Younger's statements, the Second Circuit found them to be "internally consistent and consistent with common symptoms of fibromyalgia," and further corroborated by the treating physician's diagnosis of fibromyalgia. *Id.* In regards to the "lack of physical abnormalities" and the consulting physician's conclusions regarding Ms. Green-Younger's functional limitations, the *Green-Younger* court said that:

> [W]e have recognized that "[i]n stark contrast to the unremitting pain of which fibrositis[3] patients complain, physical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." Hence, the absence of swelling joints or other orthopedic and neurologic deficits "is no more indicative that the patient's fibromyalgia is not disabling than the absence of a headache is an indication that a patient's prostate cancer is not advanced." Rather, these negative findings simply confirm a diagnosis of fibromyalgia by a process of exclusion, eliminating "other medical conditions which may manifest fibrositis-like symptoms of musculoskeletal pain, stiffness, and fatigue."

---

[3] *See* note 1, *supra*.

*Id.* at 108-09 (citations omitted).

Applying the principles from *Green-Younger* to Ms. Crossman's case, the Court has no difficulty concluding that the ALJ committed legal error. First, the ALJ's decision to privilege the opinion of the consulting physician, Dr. Jolda, over that of Ms. Crossman's treating physician, Dr. Parikh, is not supported. While the Commissioner is of course correct that a treating physician's opinions on the "ultimate legal issue of disability" does not carry any special significance, *see* 20 C.F.R. § 416.927(e)(1), his opinion regarding "the nature and severity" of Ms. Crossman's fibromyalgia *is* entitled to some deference. *See* 20 C.F.R. § 404.1527(d)(2). "It is well-settled that an ALJ cannot substitute her own judgment for that of a medical professional." *Gunter v. Comm'r of Soc. Sec.*, No. 08-5544-cv, 2010 WL 145273, at *1 (2d Cir. Jan. 15, 2010) (summary order) (citing *Green-Younger*, 335 F.3d at 106). "[W]hile genuine conflicts in the medical evidence are for the ALJ to resolve," *id.* (citing *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)), "[the] 'treating physician rule' directs the ALJ to give controlling weight to the opinion of the treating physician so long as it is consistent with the other substantial evidence." *Id.* (citations omitted). Before discrediting the medical conclusions of a treating physician, the ALJ must "explicitly consider" several favors, *id.*, including:

> (1) the frequency of examination and length, nature, and extent of the treatment relationship; (2) the evidence in support of the physician's opinion; (3) the consistency of the opinion with the record as a whole; (4) whether the opinion is from a specialist, and (5) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ's failure to provide "good reasons" for the weight accorded a treating physician's opinion is sufficient to justify a remand. *Gunter*, 2010 WL 145273, at *1.

11

From the ALJ's opinion, it is impossible to tell whether he considered the *Halloran* factors. Instead, he stated summarily that Dr. Parikh's opinion – which he erroneously ascribed to Dr. Kokkat – was "inconsistent with the evidence and record as a whole," A.R. at 24, but that Dr. Jolda's opinion was given "significant weight" because it was "consistent with the rest of the medical evidence in the record." *Id.* at 25. This type of conclusory statement is insufficient to meet the requirements of *Halloran*, and is simply not the "overwhelmingly compelling type of critique that would permit the Commissioner to overcome an otherwise valid medical opinion." *Velazquez v. Barnhart*, No. 3:02CV1264, 2004 WL 367614, at * 10 (D. Conn. Feb. 19, 2004) (citation and quotation marks omitted); *see also Ardito v. Barnhart*, No. 03:04CV1633, 2006 WL 1662890, at * 5 (D. Conn. May 25, 2006) (remanding because the ALJ's opinion "contain[ed] nothing like the multi-factor analyses that an ALJ must undertake when disregarding a treating physician's conclusions.").

Moreover, there are numerous reasons to question whether Dr. Parikh's opinion should be dismissed so readily. Although Dr. Parikh is not a rheumatologist,[4] he was the one to initially diagnose Ms. Crossman with fibromyalgia in 2004, and he has been her primary physician since 2002. The fact that his diagnosis had been subsequently confirmed by at least four other doctors, including two rheumatologists, should only bolster his credibility. *See, e.g.*, A.R. at 323 (Report of Dr. Pierangelo, a rheumatologist, reporting that Ms. Crossman has back, shoulder and foot pain from fibromyalgia); A.R. at 336 (Report of Dr. Rudnicki, a rheumatologist, that Ms. Crossman suffers from fibromyalgia and has trigger points in her shoulder, elbows and feet). The ALJ should also consider that the nature of fibromyalgia means that "one-shot" examinations of fibromyalgia patients can often yield altogether normal results, *see generally Green-Younger*, 335 F.3d at 107-09, and

---

[4] Dr. Jolda is also not a rheumatologist.

reconsider the reliability of Dr. Jolda's report on Ms. Crossman's ability to do work-related activities.

Additionally, it is clear that the ALJ's decision to discount Dr. Parikh's opinion was erroneously founded at least in part on the absence of objective evidence. *See, e.g.*, A.R. at 21 ("[T]he evidence does not demonstrate that the claimant has objective findings and functional limitations sufficiently to be considered presumptively disabled [step three] of the sequential evaluation process."); *id.* at 24 ("The evidence reveals that despite a history of fibromyalgia, the claimant had only mild cervical muscle spasms and trigger points as well as mild lumbar muscle spasms. She was able to ambulate normally. She had full range of motion in the knees and was only limited to 85 degrees bilaterally on the straight leg raising test."); *id.* at 25 (holding that the "residual functional capacity assessment is supported by the objective medical evidence of record"); *id.* at 26 (concluding, at step five, "[b]ased on the objective medical evidence of record, and the claimant's testimony as well as testimony of the vocational expert," that Ms. Crossman is capable of finding work that exists in significant numbers in the national economy). On remand, the ALJ should reevaluate the weight that ought to be afforded the opinions of Dr. Parikh and any other treating physicians in accordance with *Halloran* and *Green-Younger*, where the Second Circuit criticized the ALJ for his reliance on a "perceived lack of objective evidence." 335 F.3d at 108.

For similar reasons, the ALJ should also reassess the credibility of Ms. Crossman's statements regarding the pain and functional limitations caused by her fibromyalgia, which were corroborated by the hearing testimony of her mother. *See generally* SSR 96-7p, Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34493 (July 2, 1996). Ms. Crossman's hearing testimony was internally consistent and consistent with the symptom questionnaire she completed in November of 2004 and the common symptoms of fibromyalgia. That numerous

13

doctors have diagnosed her with the syndrome also adds to her credibility. *See Green-Younger*, 335 F.3d at 108 ("[The claimant's] complaints of pain . . . and disturbed sleep are internally consistent and consistent with common symptoms of fibromyalgia. [The treating physician's] diagnosis of fibromyalgia bolsters the credibility of [her] complaints.").

In sum, and for the forgoing reasons, the Court finds that the ALJ misapplied the relevant law in evaluating the effects of Ms. Crossman's fibromyalgia, and therefore, the Court will remand this case to the ALJ partly on that basis.

### b. Obesity

The Court will also remand on the basis of the ALJ's consideration of Ms. Crossman's obesity. As of October 25, 1999, obesity is no longer a stand-alone impairment listed in Appendix 1. *See* Revised Medical Criteria for Determination of Disability, Endocrine System and Related Criteria, 64 Fed. Reg. 46122 (Aug. 24, 1999); *see also* SSR 02-1p, Evaluation of Obesity, 67 Fed. Reg. 57859 (Sept. 12, 2002). However, the ALJ is required to consider the effects of obesity in combination with other impairments throughout the five-step evaluation process. *See id.* At step three, obesity can rise to the level of a disabling impairment under certain circumstances – generally speaking, when it increases the severity of coexisting impairments, particularly those affecting the musculoskeletal, cardiovascular and respiratory systems. Obesity alone can also be a "medically equivalent listed impairment" if it "results in an inability to ambulate effectively." *Id.* At steps four and five, the ALJ must evaluate obesity in conjunction with claimant's residual functional capacity by assessing the "effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." *Id.*; *see also Rockwood v. Astrue*, 614 F. Supp. 2d 252, 275-278 (N.D.N.Y. 2009); *Orr v. Barnhart*, 375 F. Supp. 2d 193, 199 (W.D.N.Y.

2005).

Ms. Crossman argues that the ALJ made none of the determinations required by SSR 02-1p. *See* Pl.'s Mot. at 16-17. The Court agrees. As with her fibromyalgia, there is no dispute here that Ms. Crossman is morbidly obese – she is 62 inches tall and weighs 255 pounds – which the ALJ did find to be a severe impairment. *See* A.R. at 17. But nowhere does the ALJ's opinion discuss its severity, the limitations it causes, or its effects on her other impairments – or even, for that matter, Ms. Crossman's height and weight. On remand, and in accordance with SSR 02-1p, the ALJ should explicitly evaluate the effects of Ms. Crossman's obesity, both singly and in combination with her other impairments, including her fibromyalgia.

### c. Mental and Emotional Impairments

Ms. Crossman's third major argument is that the ALJ "failed to recognize the correct diagnoses of [her] mental or emotional illnesses, and the severe symptoms they caused." Pl.'s Mot. at 17. She argues that "the ALJ should have recognized that she [has] . . . Depressive Disorder, Anxiety Syndrome, or Anxiety NOS." *Id.* at 18. In this regard, Ms. Crossman points out the many medications she has been prescribed for mental illness, *see id.* at 7; her own testimony about her history of panic attacks, *see id.* at 8-9; and the corroborating testimony of her mother, *see id.* at 9.

The Court finds this argument to be without merit. Listing 12.01 of Appendix 1, regarding mental impairments, has detailed requirements for an impairment to render one presumptively disabled. Ms. Crossman's brief states that "[t]he ALJ failed to state which of the Sections of the Listing of Impairments he considered" in evaluating her mental and/or emotional impairments. Pl.'s Mot. at 17. But that is simply not true. In fact, the ALJ's opinion is, by far, its most specific when discussing Ms. Crossman's psychological and/or emotional impairments, explaining explicitly how

15

she failed to meet the criteria for Affective Disorders in Listing 12.04 or for Anxiety Related Disorders in 12.06.  *See* A.R. at 21-22.

But even if the ALJ's opinion had not explicitly stated which Tables were consulted, that would have been of no consequence, as there is substantial evidence in the record that Ms. Crossman's emotional and/or psychological impairments do not match any of the Listings.  There is evidence in the record, for example, that Ms. Crossman's emotional and/or psychological impairments were significantly worsened several years ago by a number of issues, including a painful divorce; problems with her children that necessitated intervention by the Department of Children and Families; and alcoholism.  *See* A.R at 29-30.  While these and other factors undoubtedly continue to cause Ms. Crossman pain, she has worked admirably to overcome them, and her hearing testimony suggests that has succeeded to some degree.  *See, e.g.*, A.R. at 399-401 (stating that her anxiety attacks were significantly worse shortly after her divorce and that they had marked improved since that time); *id.* at 415-16 (reporting only physical problems when asked why she believes she cannot work).

The Court does not wish to minimize Ms. Crossman's emotional and/or psychological impairments, but the ALJ's did not commit legal error in evaluating them, and there was substantial evidence in the record to conclude that they do not make Ms. Crossman presumptively disabled at step three.[5]  *See Sullivan*, 493 U.S. at 30 ("For a claimant to show that [her] impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of

---

[5] Ms. Crossman also faults the ALJ for not scheduling an additional psychological evaluation following the hearing. *See* Pl.'s Mot. at 27.  However, it is undisputed that Ms. Crossman failed to attend two, and perhaps three, scheduled appointments with consultative mental health professionals. *See* A.R. 19, 197, 418.  Under these circumstances, the Court cannot fault the ALJ for not scheduling yet another examination.

those criteria, no matter how severely, does not qualify.") (emphasis in original). However, as the Court is remanding this case to the ALJ to reconsider Ms. Crossman's obesity and fibromyalgia, the ALJ should consider in assessing Ms. Crossman's claim of disability, the combined effects of all of her impairments, including the mental and emotional ones, in addition to her morbid obesity and fibromyalgia.

        d. <u>Vocational Expert Testimony</u>

Ms. Crossman's final argument is that the ALJ's reliance on the testimony of the vocational expert to establish that there were jobs in sufficient number that she could perform in the national economy (at step five) was flawed. She argues that the hypothetical questions posed to the vocational expert regarding jobs that individuals with certain impairments could perform did not accurately reflect her own functional limitations. *See* Pl.'s Mot at 27-31; Vocational Expert Testimony, A.R. at 425-28. Since the Court is remanding this case for the ALJ to reconsider the severity and limitations caused by Ms. Crossman's obesity and fibromyalgia – and the effects of all of her impairments in combination – it need not address this issue. However, should the ALJ again reach step five of the disability analysis, he should elicit new testimony from a vocational expert that accurately reflects Ms. Crossman's background and the limitations caused by her impairments. *See generally Cobb v. Astrue*, 613 F. Supp. 2d 253, 259 (D. Conn. 2009). In particular, the vocational expert should assess Ms. Crossman's vocational prospects given the fact that she has not worked at all since 1998 and has earned less than $600 in her entire life. *See* A.R. at 55.

## V.  Conclusion

For the foregoing reasons, Plaintiff's Motion for Order Reversing the Decision of the Commissioner, or, in the Alternative, for Order Remanding for a Rehearing [doc. # 18] is

GRANTED in part and this case is REMANDED for future proceedings consistent with this opinion. Defendant's Motion to Affirm the Decision of the Commissioner [doc. # 27] is DENIED.  **The Clerk is directed to enter judgment in accordance with this decision and close this file.**

                                            IT IS SO ORDERED.

                                    /s/  Mark R. Kravitz
                                        United States District Judge

**Dated at New Haven, Connecticut:  March 16, 2010.**